FILED
OCT 0 4 2017
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A SAMSUNG CELLULAR PHONE (252-286-0506), AN LG CELLULAR PHONE (346-413-0762), AND A CASIO CELLULAR PHONE (S/N 130300943425)

Case No. 4:17-MJ-1182-RN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference.

located in the _____Eastern_____ District of _____North Carolina_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by refernce.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841 (a)(1) & 846 | Possession with intent to distribute 1000 grams of more of heroin & conspiracy |
| 18 USC § 924(c)(1)(A) | Possession of firearm in furtherance of a drug trafficking crime |
| 18 USC § 922(g)(1) | Possession of firearm by felon |

The application is based on these facts:
See the attached Affidavit in Support of an Application for a Search Warrrant, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Tyson Hanish, Special Agent, FBI
*Printed name and title*

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means and was placed under oath.

Date: October 4, 2017
City & State: Raleigh, North Carolina

Robert T. Numbers, II United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SAMSUNG CELLULAR PHONE (252-286-0506), AN LG CELLULAR PHONE (346-413-0762), AND A CASIO CELLULAR PHONE (S/N 130300943425) CURRENTLY LOCATED AT FEDERAL BUREAU OF INVESTIGATION CHARLOTTE DIVISION, GREENVILLE RESIDENT AGENCY, GREENVILLE, NORTH CAROLINA | Case No. |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Tyson Hanish, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been since 2016. I have been employed with the FBI as a Special Agent since 2016 and have been assigned investigative responsibilities in general criminal matters.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

RIBERA Affidavit         Page 1 of 14

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a Samsung Cellular Phone known to use telephone number 252-286-0506, an LG Cellular Phone known to use telephone number 346-413-0762, and a Casio Cellular "Flip" Phone serial number 130300943425; MEID: DEC270113181700429814, hereinafter collectively referred to as the "Devices." The Devices are currently located at FBI Charlotte Division, Greenville Resident Agency, in Greenville, NC.

5. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## EVIDENCE ESTABLISHING PROBABLE CAUSE

6. On or about September 18, 2017, in Wayne County, North Carolina, in the Eastern District of North Carolina, detectives of the Wayne County Sheriff's Office Narcotics Unit were investigating suspicions of narcotics trafficking in the area of Seven Springs, NC. Detectives observed an adult, Hispanic male in the carport area of the single family residence located at 4592 Emmaus Church Road, Seven Springs, Wayne County, NC. The detectives approached the adult male, identified themselves as Wayne County Sheriff Deputies, and engaged him in conversation outside of the residence. The Hispanic male told the detectives his name was GABRIEL MANCILLA RIBERA (RIBERA). RIBERA stated he was the caretaker at the residence and was the only person at the residence. RIBERA also said he had a key to the residence and at the time of their interaction he was washing his clothes using the washing machine located inside the laundry room of the residence.

RIBERA Affidavit            Page 2 of 14

7. The detectives had previous knowledge that the residence was operated by a subject, other than RIBERA, known to law enforcement from prior narcotics investigations, and that narcotics and/or the proceeds from the sale of narcotics where suspected of being maintained at the residence.

8. RIBERA allowed the detectives into the residence and he voluntarily entered the residence with the detectives. The detectives requested and received verbal consent to search the residence for narcotics from RIBERA. RIBERA voluntarily sat without restraints on the couch in the living room for several minutes while the detectives searched the residence. No other occupants were found in the residence. When Detective Lieutenant Michael Cox entered the laundry room and was heard conducting a physical search of the contents of the laundry room, RIBERA jumped up from the couch and moved toward the front door. RIBERA did not withdraw consent to the search or instruct the detectives to stop searching.

9. Inside the laundry room, Detective Lieutenant Cox located a plastic bucket containing a plastic bag that appeared to contain powdered laundry detergent. Detective Lieutenant Cox removed the plastic bag containing the laundry detergent and observed another plastic bag lodged inside the bucket below the laundry detergent. Detective Lieutenant Cox removed the plastic bag from the lower portion of the bucket and observed that it contained four solid, wrapped packages consistent in size and wrapping with a kilogram of what appeared to be heroin, commonly called a "brick," and one partial "brick" of what appeared to be heroin.

10. RIBERA was placed under arrest and the detectives discontinued their search of the residence. Detective Lieutenant Cox applied for and was granted a North Carolina search

RIBERA Affidavit        Page 3 of 14



warrant for the residence. Upon receipt of the search warrant, members of the Wayne County Sheriff's Office conducted a search of the residence located at 4592 Emmaus Church Road, Seven Springs, NC.

11.  In addition to the suspected heroin, deputies located a semi-automatic handgun inside the closet area in the carport, a vacuum style food sealer and packaging materials that appeared to match the packaging of the bricks of heroin. In one of the bedrooms, detectives found car batteries that had been "hollowed" out. Detectives also found men's clothing and shoes that appeared to fit RIBERA. Detectives found a blow up mattress in one of the bedrooms and only a minimal amount of food in the kitchen.

12.  Based on my training and experience, I believe the car batteries were used to store and transport controlled substances. Based on my training and experience, the heroin found at the residence, the car batteries, and the lack of items normally found in a residence used as a dwelling, I believe the residence was being used as a "stash house" to store the heroin.

13.  On or about September 19, 2017, in a controlled environment at the Wayne County Sheriff's Office, a field test was conducted on a small portion of the seized substance resulting in a positive test result indicating the presence of heroin, a Schedule I Controlled Substance. The approximate weight of the heroin and packaging was ten pounds, or approximately 4,535 grams.

14.  On or about October 10, 1994, RIBERA was convicted of Felony Possession of Marijuana, a Class I felony, in the Duplin County Superior Court. The offense date for this

RIBERA Affidavit            Page 4 of 14



conviction was May 4, 1994. This offense was punishable by more than 12 months imprisonment.

15. The devices are currently in the lawful possession of the FBI. They came into the FBI's possession during the arrest of RIBERA and subsequent execution of a search warrant. Therefore, while the FBI might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws. The Samsung Cellular Phone known to use telephone number 252-286-0506 and the LG Cellular Phone known to use telephone number 346-413-0762 were found on his person, search incident to RIBERA's arrest. The third phone, Casio Cellular "Flip" Phone serial number 130300943425; MEID: DEC270113181700429814, was found during the execution of the search warrant. The Casio Cellular "Flip" Phone was located alongside RIBERA's Mexican passport in the console of the Ford F-150 pickup truck registered to RIBERA, parked in the carport of the residence.

16. The devices are currently in storage at FBI Charlotte Division, Greenville Resident Agency, in Greenville, NC. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

17. Based on my training and experience, as well as other sources of information, I am familiar with the following:

a. That individuals involved in criminal activity frequently utilize cellular telephones to communicate information related to criminal activity, including utilizing the cellular telephone's internet capabilities to access the internet to further the criminal activity.

b. That individuals involved in criminal activity using cellular telephones often store telephone numbers and names of criminal associates within their cellular telephones, as well as photographs or videos of their illicit activity and the geographic locations of these photographs or videos;

c. That this stored information often contains data on the current and past criminal associates, and may be used to aid in identifying co-conspirators who have not been identified or located;

d. That this stored information often contains notes including names and nicknames of criminal associates, ledger information, passwords, addresses and other information related to ongoing criminal activity;

e. That these devices have the capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device and PDA;

f. That this stored information often contains chat or instant message conversations detailing involvement in criminal activity and, depending on the application (also referred to as "Apps") used, cannot be accessed without searching the individual device used in the communication; and finally,

g. That this stored electronic information can be used to determine the identity of the user of the device and the individual who had telephone contact with the target cellular telephone immediately prior to the seizure of the telephone in the form of stored data identifying recent incoming and outgoing calls and/or text messages.

## TECHNICAL TERMS

18. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For

example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, which is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control

a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

 i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19. Based on my training and experience, I know that each of the Devices have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct



evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

[remainder of page left blank intentionally]

## **CONCLUSION**

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*[signature]*

Tyson Hanish
Special Agent
Federal Bureau of Investigation

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: October 4, 2017

*[signature]*

Robert T. Numbers, II
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a Samsung Cellular Phone known to use telephone number 252-286-0506, an LG Cellular Phone known to use telephone number 346-413-0762, and a Casio Cellular "Flip" Phone serial number 130300943425; MEID: DEC2701131181700429814, hereinafter collectively referred to as the "Devices." The Devices are currently located at FBI Charlotte Division, Greenville Resident Agency, in Greenville, NC.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

[remainder of page left blank intentionally]

## ATTACHMENT B

## PROPERTY TO BE SEARCHED AND/OR SEIZED

This warrant authorizes (i) the search of the property identified in Attachment A for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

(a) evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 922(g) and 924(c)(1)(A)("subject violations"), which were committed from a date unknown until on or about September 18, 2017, by GABRIEL MANCILLA RIBERA and/or his co-conspirators; or

(b) any item constituting contraband due to the subject violations, fruits of the subject violations, or other items possessed whose possession is illegal due to the subject violations;

(c) any property designed for use, intended for use, or used in committing any subject violations

Subject to the foregoing, the items authorized to be seized include the following:

1. contents of the telephone directory;
2. information and communications in the form of text, photographs, and/or images;
3. phone call logs;
4. stored communications and information to include voicemail, or any other memory feature;
5. lists of customers and related identifying information;
6. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
7. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
8. all bank records, checks, credit card bills, account information, and other financial records;
9. evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;
10. records of Internet Protocol addresses used; and
11. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

1

12. application data (also known as APP data such as Facebook Messenger, Kik Messenger and other "texting", video chat or audio messaging applications that may be present on the device being searched).

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## 18 U.S.C. § 3103a(b)(2)

Notwithstanding any other provision of this warrant, it prohibits the seizure of the following, pursuant to 18 U.S.C. § 3103a(b)(2): any tangible property; and any wire or electronic communication as defined in 18 U.S.C. § 2510.

This warrant authorizes the seizure of stored wire and electronic information because such seizure is reasonably necessary pursuant to 18 U.S.C. § 3103a(b)(2).

[remainder of page left blank intentionally]

2

